When everybody gets settled, Mr. Volchok, you can come forward. You may proceed. Please, the court. Daniel Volchok for the plaintiffs. Your Honors, I will address the argument in the judge's brief. My co-counsel will address the sheriff's arguments. This case challenges the constitutionality of defendants' bail practices. In particular, we challenge the fact that for many arrestees in Lafayette Parish, defendants make decisions about pretrial detention versus pretrial release based on money. If you have money, you go free. If you don't, you're locked up. Now, what that means is that defendants will often deprive poor people of pretrial liberty, even if releasing those people would not endanger public safety or create any unreasonable risk of non-appearance at trial. Now, under the Supreme Court precedent that we've cited, in fact, two separate lines of precedent, detention of those people is unconstitutional. But, Your Honors, apart from precedent, even as a matter of first principles, our position has to be the correct one. Our position is just that the government needs a good reason to take away somebody's physical liberty. It is antithetical to the very notion of liberty, to the idea of a free society, to say that the government can throw human beings in jail, presumptively innocent human beings, and keep them there without a good reason for doing so. And let's be clear, that is exactly what we're talking about here, detention that is not necessary to serve a government interest. We have always acknowledged, plaintiffs have acknowledged throughout this litigation, that if pretrial detention is necessary, if the government can show that releasing someone would endanger public safety or unreasonably risk non-appearance at trial, then the Constitution allows pretrial detention of that person. The Supreme Court opinions you've talked about are significant ones. Many of them are post-conviction. But Salerno certainly is about the Bar Reform Act, the Bail Reform Act. What do you make of the current validity of and the meaning of O'Donnell when it says that substantive rights are not in view? So what O'Donnell was talking about was that— Well, first, ask about the continuing validity of it. Obviously an awful lot of it was undermined by that questionable in-bank opinion in Days v. Dallas that talked mainly about standing. But it did challenge an awful lot of what was in O'Donnell. Would you say that holding is still in place? O'Donnell—I'm sorry, can I just get clarification on which holding you want— Well, the one I quoted earlier that says, insofar as this substantive right is not in view. So what O'Donnell was talking about when it said there is no substantive due process right in view here was that the district court had found in O'Donnell that plaintiffs had not raised a substantive due process argument. And so the district court did not address it in O'Donnell, and this court did not address it on appeal. Now what this court also said was that there is no absolute right, no absolute substantive due process right against pretrial detention. And we agree with that. As I said a minute ago, we've acknowledged that if the government shows it's necessary to serve an interest, then fine. Detention is constitutional. But the question here is what if the government has not made that showing? What if alternatives would allow public safety to be protected, would assure appearance at trial? And I just—in all candor, it's hard for me to believe we're still debating this. Of course the government needs a reason to lock somebody up, right? We're talking about your most fundamental freedom other than life itself, physical liberty. So there has to be a good reason. Just because your time is short, and the merits are fascinating, and there's a lot of case law to digest. But I'm going to assume you've read the briefs to the en banc court in Dave's, maybe even listened to the oral argument? Yes. I conducted part of the oral argument, Your Honor. Yes. So how would it be possible for us to resolve the threshold abstention issue without getting that opinion first on both prong one and prong three? Yeah. So I speak with a little bit of trepidation here, Judge Higginson, because obviously members of this court have information I do not about the status of the en banc court's consideration of Dave's. And so my direct answer is the en banc court has not ruled. There is not, hence, younger precedent on this direct issue. This court can choose to address younger, and then if the en banc court does, and bear in mind the en banc court— I know we could do that, but I'm asking you for your sort of being as familiar as you are with the whole package of litigation. It would seem both questions one and two—one and three are dependent on what happens in Dave's. In other words, the 28-J letter, I was sort of baffled by when there was a stay, when it was lifted, when it was reimposed here, and then the 28-Js came in. But it seems compelling. Let's say the majority of the en banc court says, well, a week, 10 days is enough time to still allow you to make constitutional objections. Or the en banc court says as to younger prong one, bail proceedings equal prosecutions, and therefore one would be interfering with the other. How would we be able to resolve this as a panel without answers to those two questions? Yes. So to be clear, Your Honor, it is the same younger question here as in Dave's. So it certainly would be within this Court's discretion to say as a matter of judicial discretion we are going to wait for the en banc court. But the en banc court might not address younger abstention at all, because the district court on remand dismissed the case on mootness grounds. If this Court were to agree with that, obviously we don't think it should. But if this Court were—well, the litigants in Dave's, whom I also represent—excuse me, my clients here may not have a position on that. But— But mootness is at play there, too. It's a different factual scenario. Very different mootness question here than there, Your Honor. And I'm happy to talk about it, although I cannot for the life imagine for me how—imagine how the claims here could be mooted. It's exactly the same constitutional violation going on today that was going on on day one when this litigation— You'd probably want to say West Virginia v. EPA affects that calculation, too, and that's never been briefed. So, Your Honor, we're happy to provide any additional briefing that the Court would find useful on mootness or any other issue. But I would say on the law as it exists now, where the Supreme Court has said that a case is moot only if a court cannot provide any effectual relief, that is certainly not the situation here. People are being detained pretrial without the finding that doing so is necessary. The relevant timing moment is 2017 for us to assess. The facts that would be relevant to your claim in this case would be 2017—at the time you filed the suit, right? Well, that is certainly true as to standing, Your Honor, which they've raised sort of in passing in their brief, and there's no problem with standing either. Of course, mootness is addressed as of now, right? The claim has to be live now. There's no doubt about it. That's what mootness is. No, but Younger, for example. Oh, right, yeah. Younger—yes, yes. This Court and other courts have said that the relevant time frame for Younger is at the initiation of the lawsuit. So if this Court is addressing Younger, that is certainly the relevant time frame. I just want to make sure that I have an opportunity to finish the point that I was making at the outset, which is we've acknowledged that detention is permissible when it's necessary to serve a government interest. The question is, is it permissible when it is not necessary to serve a government interest? And how can it be the right answer that the government can throw people in jail and keep them there when it doesn't need to do so in order to protect public safety or ensure a period to trial? And the defendant's answer is that it's constitutional, because they say the right to pretrial liberty is only a right to receive a condition of release, some condition. It doesn't matter what the condition is, whether it's impossible or not. They drew that from the Dave's district court opinion. When the panel and Dave's reviewed that opinion, it did not address that argument. It certainly didn't endorse that argument. And I submit it has to be wrong, because under that position, the government could detain absolutely every person.  Wrong— Say that again? Absolutely, Your Honor. There's no question. And it would mean they could detain any person by just imposing an unreachable condition, like go run a two-minute mile. It doesn't matter what the condition is. But again, that is just antithetical to a free society to say the government can lock you up without a good reason. Unless the Court has more questions, I'll save my time for rebuttal. Thank you, Your Honors. May it please the Court, Susan Peltier for the plaintiffs. As multiple other circuits have held, a sheriff who detains people pretrial is a proper defendant in a suit challenging the relevant bail procedures. This Court should hold the same, and it should reverse the district court's decision dismissing the sheriff. Both Section 1983 and the equitable authority of federal courts that underlies the Ex parte Young Doctrine allow for courts to entertain a suit seeking an injunction against a state or county officer engaged in unconstitutional action. That's exactly what we allege here. Unconstitutional pretrial detention by the sheriff. And the injunction we seek is a proper remedy to that unconstitutional action under both 1983 and Ex parte Young. Who reviews the sheriff's in or out decisions under the STOP program? There is no review. The commissioner can't alter the decision? The record here shows that the commissioner could, but as a practice he never has and does not plan to do so. He says that he treats those decisions as final and he just signs them. But we don't actually need to show that the sheriff has authority under STOP in order to make him a proper defendant in this suit, because just the fact that he is an officer executing and enforcing those bail orders and keeping people in prison is sufficient. The sheriff here argues that he is not the cause of the injury in this case, but he is. The injury here is pretrial detention, a deprivation of liberty. And the sheriff is the one executing that deprivation. He has the keys to the jailhouse. That's sort of the quintessential situation where an officer is a proper defendant in a 1983 or Ex parte Young suit. Counsel, the question came up in Dave, certainly. It's in the Sixth Circuit opinion that you talk about. You're saying there's enough connection, that you're the keeper of the keys. But the harm that's being done is not that a lawful order is being carried out. And so you really have to challenge the lawfulness of the order that doesn't properly take into account what you say needs to be taken into account. There's not much law in the Sixth Circuit, it's about all you have, that really makes this point for a sheriff, and it's a fairly controversial position. It is troubling me, and I can see it both ways, but it is troubling me to say that the sheriff is a proper defendant in all that means under this kind of litigation, strictly because until we change the orders, he is carrying out these unlawful orders, even though he has no role to play in the creation of them. Well, Your Honor, I think that's actually quite common in officer suits. For example, in a case where you're challenging an unconstitutional criminal statute, you don't sue the legislature that enacted the statute, the ones that really caused the unconstitutional law to come into effect. You sue the attorney general and his subordinate officers to enjoin them from enforcing it. And the same is true in a voting rights case. You would sue the county officials that are responsible for carrying out the new voting law, not the legislature that enacted it, and not some official who just has sort of high-up authority over those officials. Here you have the actors who are still acting, and they've been sued. So it's not the same situation, it seems to me, from what you talk about. Well, Your Honor, we think both are proper defendants. We think that they're both the closest connection to the injury here, certainly the judges and the commissioner that are issuing the bail orders, and then the sheriff that's enforcing them. And we think they're both proper defendants, and there's no precedent requiring this court to figure out who is the more proper defendant, as long as both of them have the requisite connection and can satisfy the causation and redressability parts of Article III standing. And we think that that's the case here. I'll also just address the sheriff's final argument as to why an ex parte young suit doesn't lie against him, and that's his contention that ex parte young and the authority, equitable authority of federal courts to enjoin unconstitutional enforcement action does not reach enforcement of court orders. And that's simply not true. The Supreme Court has never intimated any such limitation on federal courts' equitable authority, and this court in Dewey, Tallahassee, theaters made clear that the proper way to challenge the validity of a court order is to seek an injunction against its enforcement. And that's what we do here. The sheriff has not identified a single case from any other jurisdiction making the contrary point. And that's why the Sixth Circuit, the Ninth Circuit, and the Eleventh Circuit have all held that you can, in fact, get an injunction against enforcement of a court order, and that's in the Morby-Urquhart case, the McNeil case, and the Schultz case from the Eleventh Circuit from this year. I'd just quickly like to touch on the younger points to the extent that this court does reach them, which we think is proper for the reasons that my co-counsel mentioned. The Supreme Court has also answered the question here, saying that only if the relief sought in the federal suit would enjoin the criminal prosecution as such, is younger abstention potentially applicable. And that's not the case here because we only challenge the pretrial procedures, not the actual criminal prosecution. That's enough, but there's also the third prong of younger. As Your Honor mentioned, there is no adequate opportunity for the plaintiffs here to have brought their constitutional claims in the Louisiana proceedings. We know that it would take at least a week before they could raise them in the bail reduction hearings, and we know from Gibson v. Berryhill, the Supreme Court's decision there, that when you have to suffer the very unconstitutional injury that you're challenging during the time that you're waiting, that's not a timely opportunity, and therefore it's not adequate for purposes of younger. Well, in younger, there certainly is specificity to State procedures. Whatever is decided in days, whichever goes, may in part turn on the procedures available to inmates in Dallas. The parishes of Louisiana may have somewhat better, somewhat worse available procedures. The Florida case of Gerstein and Rainwater had its own procedures, which got changed in the middle of the game, or at the end of the game, really. Nobody's argued that there are any specific procedures. I guess it's more of an argument from the other side. They're available in Louisiana that would not be available elsewhere. That would satisfy factor three. I don't think so, Your Honor. I think that they have argued that there has to be bad faith in order for the procedures to be inadequate, which is just simply not the case. We know that from Sprint. We know that from Gerstein. The opportunity here, no one contests that there's any opportunity before a week, at least, after the person has been arrested for them to raise their claims, and they are going to be detained for that entire period. I'll reserve the remainder of my time. Thank you. Thank you. Good morning, and may it please the Court. My name is Shea McPhee. I represent the judicial defendants on behalf of the Louisiana Attorney General's Office. Who is the lead defendant now? We now have Commissioner Duguay. Instead of Frederick. All right. Thank you. Excuse me. Yes, and he's actually here watching these proceedings. But in light of this Court's string of decisions in O'Donnell, O'Donnell 1, O'Donnell 2, the 15th JDC made significant changes to its bail procedures. The 15th JDC acted en banc to rescind the bail schedule. All of this Court's precedents, O'Donnell 1, O'Donnell 2, all of those said that the precise constitutional injury was the rigid application of the bail schedule. And here, there is no more bail schedule. And with few exceptions, misdemeanor arrestees are automatically released after booking. You're speaking as to modifications made after 2017? That's correct, yes. And not only that, every single arrestee who isn't automatically released receives a bail amount set in accordance with the ten factors of Article 316. So there is no more rigid application of any bail setting. Now everything is set in accordance with those ten factors in which the ability to pay is one of them. Is part and parcel of this argument that you are disavowing the practices that were in effect in 2017 as illegal? It's a voluntary cessation. So I'm not defending those practices. I'm just saying that we have changed them dramatically. They are no longer the same. And I think that the law seems to be very, very nuanced here, and I'm sure you know. One, are you disavowing them as illegal? And two, are you making a statement that the state would never return to those? Are you making either of those assertions here now? I think a good inquiry of how to frame this is what Judge O'Scanlan said in his Walker decision. He considered three factors, whether or not the government has consistently maintained its commitment, whether or not the city, or sorry, not the city, but whether or not the abandonment of the original practices was unambiguous, and three, whether or not there was substantial deliberation that sort of went into the change. Here we've consistently maintained no bail schedules since 2018. That was not an ambiguous. It wouldn't be hard now if you were authorized to and felt this way from analysis to disavow them as illegal and to make an assertion that Louisiana won't return to those. I think that it would require more factual finding to determine whether or not there was a rigid application of the bail schedule here. Judge Rosenthal in the O'Donnell case made very thorough factual findings about the way that the bail schedule was applied. We don't have anything more than the plaintiff's allegations in this case, and so I'm hesitant to disavow things that I'm just not seeing. If that's true, and I don't mean to ask all the questions, but if that's true in terms of trying to apply younger, put aside days for a moment, the plaintiff's allegations are that there is no immediate opportunity at the bail reduction hearing to challenge the constitutionality. Do you dispute that? Can you cite is it a collateral attack vehicle? What happens in Louisiana? What's the vehicle, and what's your best supporting authority for? In Louisiana, and the sheriff briefed this issue much deeper than we did, and we would like the opportunity to brief it once the en banc court does finish its work in Davies, because as you said, as you pointed out to opposing counsel, there is no precedent now in the Fifth Circuit on point. The Fifth Circuit said that it committed all discretion to the district court to decide the issue in the first instance. So we would like the opportunity to brief these issues, but, no, in Louisiana, there is an opportunity to address the bail issue or to address the amount of bail you can raise. Not bail reduction amounts. Is there an opportunity with counsel to attack the constitutionality of it rather than just to say I'm not a flight res score? When does that come in Louisiana? I'm afraid I couldn't answer your question right now. You could absolutely bring a habeas petition, which I think would be sufficient, but, again, I think that we'll have to get more information out of the en banc court on that issue. But I do think that it's important to note, turning back, that that rescission of the bail schedule, I think, is a voluntary succession under any standard. And then, of course, the Commissioner also adopted, it came to light at trial, that the Commissioner had also began using a modification form to consider non-financial alternatives to bail. And he would ask, so in the 15th JDC now, every single person who doesn't, who isn't automatically released, will receive a hearing within 72 hours in which the Commissioner will ask, can you afford a lawyer? And if the answer is no, and if the Commissioner believes that the case is appropriate, then he will refer them to some non-financial alternatives. In light of those changes, the district court made a very important finding for the purposes of the merits of plaintiffs' equal protection and procedural due process claims, and that is that nobody is now held solely on the basis of wealth in the 15th JDC. And that finding, that nobody is held solely on the basis of wealth, makes a big difference, because that's what, it's only when the government holds people solely on the basis of wealth that you trigger heightened scrutiny under the Equal Protection Clause, or when you trigger those fundamental fairness concerns under the Due Process Clause. So I think that that factual finding, that nobody now is held solely on the basis of wealth, really, which of course is reviewed for clear error by this Court, I think that that finding truly should kill their claims on the merits, if the Court is inclined to reach them. But again, Judge Suffolk, as you noted, I think that after, even after this Court's en banc opinion in Davies, that there is still those substantive holdings of O'Donnell I and O'Donnell II that remain. I think all, perhaps, it could be argued, Daves embanked it, is to say that case, perhaps there were not proper parties withstanding, but it did not affect the substantive merits rulings about substantive due process. One way to look at it. I'm not sure it's the proper way. Let me ask you about this idea that the complaint here doesn't even raise substantive due process. Is that more your argument or the Sheriff's argument? That is their argument. They certainly are seeking relief, declaratory judgment, saying this sort of wealth-based determination is unconstitutional. It seems a bit of a stretch to me. Why don't you give me another run at it as to why it's not really in the complaint. Well, Rule 8 requires a very clear statement of what it is you're asking for. And if you go look at the Davies complaint, actually, it's a great example of a request for this substantive heightened scrutiny finding that detaining you is okay because I have this heightened interest. They ask for that expressly in the Davies complaint. It is not there in our complaint. They ask for only two things. One, a procedure that enables the commissioner to consider a person's wealth. And two, they ask for procedures to consider non-financial alternatives to money bail. And I think that those changes that the district court observed, those give them everything that they asked for. And so I do think that their claims are moot. There might be one exception, to be fair. They ask for findings. But I will say that, and then in the reply brief, they say that to not give them findings is inconsistent with O'Donnell 1, with the O'Donnell 1 injunction. They say that the O'Donnell 1 injunction required Harris County to provide findings, and since we don't do that and it's stipulated that we don't make any findings, that we're inconsistent with O'Donnell 1. But I don't think that's right. That requirement to offer findings was a remedy. It was not a standard of liability. And all the cases that they cite, Williams v. Illinois, all those cases talk about the importance of federalism and flexibility and allowing judicial commissioners to develop their own procedures. And Judge Elrod, during the Davies-Onbonk argument, said we don't make state judges explain themselves. We don't make them. And so I think that that request to have a finding would go beyond what the Supreme Court's precedent allows. There are no further questions. May it please the Court. Patrick McIntyre here on behalf of Sheriff Mark Garber. This case has enough issues, I suppose, as it is, and I hesitate to throw out one more, but on Friday when I was reviewing the record and preparing for this, I noticed that the plaintiffs in their notice of appeal designated the judgment against the judges as being the judgment that they were taking their appeal from. And, of course, Rule 3 of the Rules of Appellate Procedure requires you to designate the judgment. The sheriff was dismissed by a separate judgment a couple of years earlier. But did they designate the final judgment in this case? It did designate the last judgment. Does that incorporate all earlier orders? Under the 2021 revisions, perhaps so, although the comments are not clear. They speak about, you know, where a previous claim against the party has been dismissed and then the final judgment is rendered on the remaining claims against that party. Then an appeal of that final judgment subsumes everything that went before. Well, to argument noted, if we want anything further from any— I just wanted to advise the Court we're reserving the right to perhaps file a motion to dismiss when I can research that issue some more. If we want anything further on it, we'll let both sides know, all sides know. Thank you, Your Honor. With respect to the arguments of the plaintiffs, they make a mistake when they say that the issue here is detention, that that is the violation. In fact, they recognize that some people are going to be detained. The issue is detention without what they claim are proper procedures. And, of course, the sheriff has nothing to do with the procedures leading to the detention. He just holds the keys to the jail. If the judges say to let somebody go, he will let them go under whatever conditions or parameters they specify. Who made the stop policies? Well, the stop policies are a work release involved. Who came—who wrote them up? The sheriff wrote the stop policies pursuant to legislation that provides for work release opportunities. Can he change them? Presumably, yes. The sheriff can change the stop policies. He can abandon the stop program. When he applies them either to hold the pretrial detainee in jail or to release them, who can reverse him on that? He cannot release pretrial detainees under the stop program without the permission of the judges. The judges, so not the commissioner. Well, I believe it's the judges that he gets permission from. And when you're saying you believe, this is as of 2017? Are you relying on the new modified form? The stop program has not been modified, but I believe that they go to the judges rather than the commissioner to get permission to release pretrial detainees, which they can't do without permission of the court. To release. To release someone under the stop program. They cannot do that without permission of the court. So let's say he decides not to release a pretrial detainee. They're arrested in jail waiting. Someone who doesn't qualify for the stop program. Who can reverse his decision to not allow that pretrial detainee to be released? There is no one that I'm aware of who can reverse a decision under the stop program. So he made the policy and he's not reversible under it? And yet he isn't the driving force behind it? The key issue and the disconnect in the plaintiff's argument, they acknowledge that the plaintiffs have no constitutional right to stop, to work release participation, which this court has held. But then they say it's a violation of our constitutional rights if we're not released from detention under the stop program. And that's a fundamental disconnect. If you have no constitutional right to participate in the work release part of the stop program, it cannot be a violation of your constitutional rights if the sheriff does not allow you to participate in the program. The program is created by statute, is entirely discretionary with the sheriff. There's no right, either statutory or constitutional, to participate in the stop program. And that's what this court has held with respect to work release programs generally, which is what stop is. The Western District has held the same. That's the disconnect. Stop is not connected with bail at all. It is not generally a, well, we'll release you on recognizance or we'll release you on home detention or we'll release you. Oh, you've got a job. You might lose the job. You know, there are conditions that they examine people who might qualify, and not everybody's going to qualify. It's an anti-recidivism program. It's not bail. There's no constitutional right to participate in it. It can't be a violation of their constitutional rights if they're not allowed to participate in it. And that's the fundamental disconnect with respect to the stop program. And if the commissioner is deferring to the sheriff and relying upon the stop program for decisions that he would rather not make or he hasn't made or unable to make or whatever the circumstances, that's not a violation by the sheriff of anybody's constitutional rights. Does that answer the question? Go keep going. Okay. That's an argument. It isn't the one the district court embraced when it dismissed your client. I think that is the one. The magistrate judge wrote a recommendation and he made those points about stop is not bail and stop. And the district court affirmed what the magistrate judge recommended. So I think those were the same points. And it's a discretionary program under a statute, and it's not something that he has a constitutional right to participate in. So those points were made in the, I think, in the report and recommendation from the magistrate judge. Your position is that the sheriff has no liability under the stop program, it's unrelated to bail, but it also is of no benefit to the validity or invalidity of how bail is operated. So if we find any defects in what is occurring and any merit in what's being argued about the friends on the other side, what you're doing does not help or hurt. It is unrelated. It is unrelated. It does, there is a component of stop that would allow someone to get out of jail, but it's unrelated to bail. It's unrelated to procedures for setting bail. It's a program to which someone does not have a constitutional right to participate. The sheriff's not violating anybody's constitutional rights if he denies them participation. What's the purpose of the program? It's anti-recidivism. It's a broad program. If your problem is drug abuse, they'll put you in drug counseling. If your problem is you don't have a GED, they'll get you a GED. If your problem is something else and you qualify and you have a job, then they might put you in work release so you can go to your job. And then they have another facility that has people who are housed at night in a separate part of the facility that go to work during the day. They tailor the available benefits to meet the needs of the qualified inmates as an effort to, you know, as an anti-recidivism effort. So it's got nothing to do with bail. Well, counsel, the sheriff, from the plaintiff's viewpoint, still has something to do with bail, and your client's a proper defendant. And I referenced the Sixth Circuit opinion in the case, which is the principal authority for that. It does seem to me the argument has some plausibility to it, that when looking at the chain of events that lead to a potential constitutional violation, there's the decisions early on that are or are not made to take into account wealth-based effects of bail policies. And then at the end of the process, there's somebody who's enforcing it. So it does enforcing the absence, I guess, of a release order. Why isn't that enough to make a sheriff a proper defendant? Well, I mean, this is a point that we made with respect to, like, Ex parte Young and its application. You can't really find any cases. They cited the Dewey case, but it's distinguishable because they found the sheriff in that case was violating court orders, arresting people or harassing people outside the bounds of a court injunction. But there really aren't any cases that stand for the proposition that Ex parte Young allows the court to enjoin future court orders. It may come down years hence. Well, our embanked case, 8-8-TIE, I think it was, Okpalovi or something like that. I haven't had to pronounce it in a while. I may have forgotten where the syllables go. It talks about having some connection. Well, the sheriff has some connection. He's got the keys. Not with the violation. Well, he's got a connection with the effect of the violation. When you look at the overall, what 1983 is trying to do is to stop the overall effect of – And the sheriff is a player in the effect of the violation and potentially has a connection. Help me with why I'm agreeing on that. Well, imagine this. This is actually what the court did in the Pew v. Rainwater case, the 1973 version. If the court were to order the judicial defendants to change the way that they practiced bail setting, and you presume that they would comply with an injunction from this court or an injunction from the district court, that would solve the problem. There's no need to involve the sheriff. The court, the state judges would presumably comply. That would end the problem. The sheriff does not have to be involved. And, in fact, Pew v. Rainwater rejected the kind of approach that this court is being asked to implement in this case. I see my time is up. Thank you, counsel. Thank you very much, Your Honor. Thank you, Your Honors. I want to start with the point Mr. McPhee made. He said that the trial court found people are no longer being detained in Lafayette Parish based on wealth. There is no such finding to my knowledge. Mr. McPhee didn't give a record on appeal site. They did not argue that in their brief. And no such finding could possibly be made because even though the commissioner now uses the modification form, two of the principal available alternatives end up involving wealth-based detention. Number one is the stop program. We've talked about that a little bit. But the district court made clear in its post-trial opinion that the stop program involves fees, an application fee and a daily fee. And there is, again, in the trial court's opinion, a recounting of how at least one arrestee, and there are no doubt others, said, I can't afford that. I can't even afford that. So it's no different than having secured money bail imposed on you. Bill, you're sort of heading in a different direction, which is what the opposite side often does, from what we just heard from the sheriff's counsel. He's saying it's irrelevant to bail. Do you accept that? I'm sorry. It's irrelevant to the issues regarding bail because it's not a bail-related. It's another way to get out of pretrial detention or to get out of jail, but it's not a way really to affect the bail process. I may not be understanding it. If he could get out of jail, he could play. He could play the card, but it's for work release and whatever else. It seems to me, at least from the way it was described by the sheriff's lawyer just now, it's an entirely separate matter. I don't think it undermines your position, but it does seem to me that your position is either agreeing with what he said or it needs to disagree in some way that the work release and other activities that come under the stop program are not bail-related matters. They're just another way that a detainee can get out of jail. They certainly are directly related to the question of pretrial release and pretrial detention, which is what we say the constitutional violation is, people being detained when the government doesn't have a good reason for doing so. The stop program is one way. Essentially, the commissioner outsourced his role in keeping people in jail when the government didn't have a good reason. He did it by imposing secured money bail. The sheriff does it by imposing application fees, daily fees, and other criteria that we're not even sure about. The commissioner testified he didn't know about all of them. So it absolutely is still the case that people are being detained based on wealth. And because of that, these claims cannot possibly be moot. It's exactly the same violation that we articulated before. So you don't even get to voluntary cessation. But if the court thought it should get to it, Judge Higginson, counsel's unwillingness to disavow the prior procedures and to say they will never return makes absolutely clear under the Supreme Court's decision and parents involved that there cannot be any voluntary cessation here, although, again, I say you don't even get to that. On the question of whether the issues were raised properly below, counsel talked about what is and is not in our complaint. I think everything quite clearly is in our complaint. But the Supreme Court has made absolutely clear that legal theories, which is what we're talking about here, legal theories do not have to be in a complaint. In fact, Johnson v. City of Shelby, cited in our reply brief, the Supreme Court unanimously and summarily, without even merits briefing an oral argument, reversed this court for doing exactly what the defendants are asking the court, essentially, to do here, which is to dismiss or to affirm dismissal of a complaint based on the absence of a legal theory in the complaint. It has to be in the motion for summary judgment. And the judge's brief here acknowledges expressly that all of the arguments we make here on appeal were in our summary judgment motion. So it was in the complaint, but it didn't even have to be in the complaint. Your Honors, if I can conclude, I said in the topside argument that the younger— Why do you need the sheriff in your case? The sheriff is the one holding the keys to the jail cell. Now, could we have sued fewer defendants? Quite possibly, although, as you would see, the judges would raise all sorts of arguments about— He says that the predicate of his actions are that he acts on a universe of people who are otherwise lawfully being detained, otherwise being lawfully constitutionally detained, but he then can, for independent reasons, release them, in other words. Well, that's the question here, Judge Higginbotham, whether, in fact, these people are or are not being— I understand that, but— Well, our argument is they are not, and you asked why we should sue the sheriff. The answer is because he is one of the principal actors in committing what we allege to be the unconstitutional conduct, the detention, absent a compelling need for the government to detain. But the unconstitutional detention is simply that you're holding someone without a demonstration that a bail bond is essential to his appearance. Correct. And that is—and the sheriff—that's sometimes true. I guess I should clarify, Judge Higginbotham. That's sometimes true. In other cases, the person is being— Once you've made that determination, they're lawfully detained. Well, no, Judge. Let's talk specifically about the subset of— Let me finish. He's lawfully detained, and then he has an independent program where somebody comes along that's got a job, he's got a particular emergency, whatever, to release him. But there is an independent—there seems to be a striking separation between what your claims are, which I understand, and what his role in that is. In other words, it's a given that whatever he does is not going to affect your claims, and you don't need him in to implement the basic demands of the Constitution. The reason— It's the initial detention. So perhaps the easiest way to answer it is to focus on the subset of people whom the commissioner does refer to the STOP program. So in that circumstance, the commissioner has not imposed secured money bail and has deemed it appropriate to refer a person to the STOP program. It is then entirely up to the sheriff whether that person goes free or is detained. No other actor has made any decision about that person's ultimate fate in terms of pretrial detention. It is the sheriff. So for those subset— But you want the sheriff just to stop—to stop, stop. We want the sheriff not to be holding people, not taking away people's liberty. You want him to stop, stop. No, Judge Higginbotham, I wouldn't put it that way. He is free— Well, I understand you wouldn't put it that way, but that's— Well, I mean, the reason I wouldn't put it that way, Judge Higginbotham, is because it is certainly within the sheriff. To the extent the commissioner is outsourcing his authority over pretrial detention decisions to the sheriff, the sheriff has the same discretion under the Constitution that the commissioner would, which is to detain people whose release would endanger public safety or create an unreasonable risk of nonappearance at trial. Our submission, and the reason we sued him, is that people are being detained, including by the sheriff, as opposed to by the commissioner or anyone else, without that finding, and we allege that's unconstitutional. Five seconds, Your Honors. I've made a statement in the topside argument that the Younger issue here and in Dave's is identical. I should have been a little bit more precise. The legal issues are, of course, the same, but the factual settings are somewhat different, and that may bear on the ultimate—that may result in differences in the ultimate analysis. Thank you. Well, depending on what happens with Dave's, there may be opportunities to tell us what you think again. We would appreciate that opportunity, Your Honor. Thank you. Your Honors, very briefly, I'll just hit a few points in response to the sheriff's arguments, but first I will just note that the commissioner mentioned that state habeas might be an adequate opportunity to raise the claims here. That was not preserved. It has never been argued, and it's therefore forfeited. It also is incorrect. That would require the plaintiffs to have brought a separate proceeding, which is something that would basically impose an exhaustion requirement on federal claims, which we know from the Supreme Court's decision in Monroe v. Pape is not required. But getting to the sheriff's arguments about being a proper defendant, it may be that he's not a necessary party and we could have brought our claims simply against the judges here, but that does not mean he's not a proper defendant, and here he is. We also could have brought our claims solely against the sheriff because he is engaging in the detention that causes the unconstitutional deprivation of liberty that's at the core of our claims. And so whether that is through enforcing the bail orders that are void because they don't comply with the Constitution or through denying people relief through STOP independently, both of those deprive people of their liberty and therefore are proper basis for this Court to enjoin the detention and require the requisite findings to be made. The sheriff also focuses, again, on whether or not there's a violation by the sheriff when the commissioner delegates the authority to make decisions about STOP to the sheriff. But the question here isn't who is responsible and who should be doing it. It's about what happens on the ground in practice, and how can this Court break the causal chain in the unconstitutional deprivation of liberty. And that can happen by stopping the sheriff from detaining people when there has not been a proper finding by the commissioner, and it also can happen by making the sheriff use STOP to stop detaining people who the government has no basis to detain. Finally, the sheriff makes arguments about how there's no right to work release and STOP is solely a work release program. In this case, STOP is not functioning solely as a work release program. He was dismissed on a motion to dismiss, so the Court can look to our complaint at page 39 of the record. And we allege that STOP is the way through which alternatives to bail are considered in this situation, in this county. And that's the relevant facts. But those were also borne out by the District Court's finding at page 2634 through 66. Thanks very much. All right, counsel. Unless I've lost track, I think that's all of you on this case. I appreciate your assistance to us. We'll take the case under advisement.